J-S74007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYAINA FINCH | |
| Appellant | No. 898 EDA 2016 |

Appeal from the Judgment of Sentence February 19, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002763-2015

BEFORE:  OTT, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED OCTOBER 12, 2016**

Appellant Tyaina Finch appeals the judgment of sentence entered in the Court of Common Pleas of Delaware County on February 19, 2016, following her non-negotiated guilty plea to one count each of third degree murder and terroristic threats[1] for the killing of her boyfriend, an off-duty police officer with the Darby Borough Police Department.  We affirm, albeit for reasons other than those relied upon by the trial court.

The trial court related the factual and procedural history herein as follows:

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 2502(c) and 2706(a), respectively.

On November 13, 201[5], Appellant entered an open guilty plea to Count 2: Murder in the Third Degree (F1).[2] At the hearing, this [c]ourt explained to Appellant that an open guilty plea meant there was no agreement between her counsel and counsel for the Commonwealth as to a recommended sentence and that the sentencing would be completely within this Court's discretion. [N.T., 11/13/2015 p. 4, 14]. This [c]ourt explained to Appellant the guideline ranges for Murder in the Third Degree. [N.T., 11/13/2016 p.5]. Appellant confirmed that she went over the guilty plea statements with her attorney, that she reads/writes/ and understandings [sic] the English language, and was not under the influence of any drugs or alcohol. [N.T., 11/13/2015 p. 7]. Appellant also stated that she understood her right to have a trial by judge or jury and that entering a guilty plea would mean she was not having a trial and that her counsel would not be filing any pre-trial motions. [N.T., 11/13/2015 p. 9, 14]. Counsel and this Court both explained to Appellant that her plea would limit the issues she could raise on appeal. [N.T., 11/13/2016 p. 10].[3] Appellant told this [c]ourt that her plea was a result of her own free will and that no one had coerced or forced her or promised her anything in return. [N.T., 11/13/2016 p. 11].

Sentencing was set for January 7, 2016, and pre-sentence, psychiatric, and psychological evaluations were ordered. Counsel for the Commonwealth and counsel for Appellant were ordered to provide sentencing memorandums.

On December 31, 2015, counsel for Appellant filed a Motion for Funds for Psychological Expert. The motion requested that the County pay for a specialized domestic violence evaluation to determine the nature and impact of her experience of being abused by Mr. Hudson as well as other persons in her past." [1] Appellant further contended she shot Mr. Hudson during

---

[2] In exchange for Appellant's guilty plea, the Commonwealth dismissed charges for first degree murder, aggravated assault, and possessing instruments of crime. *See* 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), and 907(a), respectively.

[3] Specifically, Appellant was informed that she could challenge the trial court's jurisdiction, the legality of her sentence, trial counsel's effectiveness or whether she had entered her plea unwillingly. N.T. Guilty Plea, 11/13/15, at 9-10.

a "boisterous physical altercation during which [Appellant] felt the need to defend herself.[2]"

On the scheduled sentencing date of January 7th, this [c]ourt addressed the motion, denying counsel's request for the County to pay for the expert but allowing counsel additional time in which to have Appellant evaluated on her own accord. [N.T., 1/7/2016 p. 5]. Appellant failed to avail herself of this opportunity. Sentencing was re-scheduled for February 19, 2016.

On February 19th, the Commonwealth presented several individuals who spoke on Officer Hudson's behalf. Chief Smyth, Chief of the Darby Police Department for the past thirty-two years, told this Court that Officer Hudson was a special person who was loved by all, had a vibrant personality, and [a] young man who put himself through the police academy and had a promising career ahead of him. [N.T., 2/19/2016 p.6].

Chief Jeffries, Chief of the Yeadon Fire Department for the past eighteen years, told this [c]ourt that Officer Hudson started with their Department as a junior fireman and excelled in all of his training and eventually became Lieutenant with responsibilities that included teaching and training new members; also serving on the Executive Board for several years. [N.T., 2/19/2016 p. 8-9]. In 2008, due to his dedication and hard work, Officer Hudson was awarded the Chief's Award. [N.T., 2/19/2016 p. 9].

Paul Andrews Jr., Officer Hudson's best friend, told this [c]ourt that he had known Officer Hudson for ten years and that Officer Hudson was a positive influence in his life and that he always knew Officer Hudson to be caring towards Appellant and how much he wanted Appellant as his girlfriend. [N.T., 2/19/2016 p. 11]. Mr. Andrews also told this [c]ourt that Officer Hudson told him on several occasions that Appellant was very aggressive towards him and that she argued with him a lot and that Officer Hudson's way of handling that was to leave the situation or to call him and talk about it. [N.T., 2/19/2016 p. 12].

On behalf of his family, Officer Hudson's cousin, Tiffany Settles, told this [c]ourt that Appellant came on their family vacation to Virginia and Appellant told her that she really didn't have any family or any connection with them as she was originally from Hawaii and then adopted by a family in Philadelphia who already had many other children. [N.T., 2/19/2016 p. 14]. In response to Appellant's statement in her evaluation that she was not free to leave, Ms. Settles testified

that she personally observed instances at Officer Hudson's home where Appellant came and left freely. [N.T., 2/19/2016 p. 15]. Officer Hudson's father, Alfred Hudson, told this [c]ourt that his son was young, vibrant, and loved and respected by many; was a great writer; a noble man and that not a day goes by that the [sic] does not grieve for the loss of his son. [N.T., 2/19/2016 p. 16].

The last individual to speak was Officer Hudson's mother, Karen Hudson, who gave this [c]ourt a very emotional and harrowing account of what her family has been through since the loss of Officer Hudson. [N.T., 2/19/2016 p. 17-21].

In addition to the testimony, the Commonwealth also admitted C-4, a copy of the Protection From Abuse (PFA) Order signed by Judge Cartisano against Appellant, where Officer Hudson was the victim. The Commonwealth also admitted C-5, a video of Appellant as she was being walked into [c]ourt to be processed shortly after being arrested, which depicts Appellant staring directly into the camera and saying, "do you want me to smile." Counsel for the Commonwealth also pointed out to this [c]ourt that Appellant's first version of the events that transpired that evening blamed her actions on the dog, stating that she was trying to remove the gun from the dog's mouth when it accidentally went off. The medical examiner told Officers that Officer Hudson was probably lying or kneeling down at the time he was shot as the trajectory of the bullet was a downward angle, which prompted Appellant to give another bogus statement to police. It wasn't until Appellant's third statement to police that she began telling them a story of Officer Hudson's abuse and that on the day of the shooting, Officer Hudson was abusing her and throwing her around the rooms yet the house was virtually undisturbed in crime scene photos. [N.T., 2/19/2016 p 40].

On behalf of Appellant, Fred Grant, told this [c]ourt that Appellant is his foster daughter, and that she was different, had ups and downs but that she was helpful around the house and with her church ministry. [N.T., 2/19/2016 p. 26]. Robin Grant, also adopted by Fred Grant, grew up with Appellant and told this [c]ourt that she was close with Appellant when she was younger but that she moved away and didn't stay in contact often, but that she randomly ran into Appellant at the mall one day while Appellant was with Officer Hudson but that she didn't know much about their relationship. [N.T., 2/19/2016 p. 29]. Edward Ray, Appellant's biological father, told this [c]ourt that all he knew about his daughter was that she liked children and took part-

time jobs to go to school. [N.T., 2/19/2016 p. 30]. Appellant told this [c]ourt that she wanted to apologize to Officer Hudson's family, that her actions were senseless and that she loved Officer Hudson. [N.T., 2/19/2016 p. 37]. In addition, Appellant told this [c]ourt that Officer Hudson's mother was very nice to her. [N.T., 2/19/2016 p. 37].

After listening to the testimony, reviewing the pre-sentence investigation report, the drug and alcohol evaluation, and the psychiatric evaluation, taking into account the guidelines, the nature of the crime, the impact on the victim and society and Appellant's rehabilitative needs, this [c]ourt sentenced Appellant to 18-to-36 years in a state correctional facility. Appellant was also sentenced on a separate transcript, 2766-2015 to five years' probation for terroristic threats consecutive to the third degree murder sentence. [N.T., 2/19/2016 p. 48]. In that case, Appellant was charged with terroristic threats for another incident involving Officer Hudson, where Officer Hudson had locked himself in the bedroom, called 911, and Appellant answered the door holding an eight inch steak knife, telling the responding officer that she was tired of him yelling and wanted him dead.[3]

Counsel for Appellant filed a notice of appeal on March 18, 2016 as well as a 1925(b) Statement and an Application to Appoint Counsel, as Appellant was no longer able to retain his services. This [c]ourt appointed the Delaware County Office of the Public Defender who was given an extension of time in which to file a new 1925(b) Statement, which was timely filed on May 18, 2016.

---

[1] See Motion for Funds for Psychological Expert, Paragraph 3, filed December 31, 2015,
[2] See Motion for Funds for Psychological Expert, Paragraph 2, filed December 31, 2015.
[3] See Affidavit of Probable Cause transcript 2766-2015. This case is not on appeal.

Trial Court Opinion, filed 5/20/16, at 1-5.

At the guilty plea hearing, Appellant asked for a deferred sentencing date so that a presentence investigation report (PSI) and a mental health

evaluation could be completed and to enable counsel to prepare for sentencing. N.T. Guilty Plea, 11/13/15, at 4. The trial court granted Appellant's request to hold the sentencing hearing in early 2016 and scheduled the same for January 7, 2016. *Id*. at 4, 17-18. The trial court further indicated it would be ordering a PSI along with a psychiatric evaluation for diagnosis and treatment after the Commonwealth informed the court it already was in possession of a psychological examination. *Id*. at 18-19. Appellant never requested public funds to obtain an additional evaluation, and she indicated that she had no further questions for the trial court before the termination of the proceedings. *Id*. at 20.

On December 31, 2015, Appellant filed her Motion for Funds for Psychological Expert wherein she requested what she termed a "Domestic Violence Evaluation" in order "to determine the nature and impact of [Appellant's] experience of being abused by Mark Hudson, as well as other persons in her past, and whether [Appellant's] history of abuse is relevant for purposes of mitigation, which defense counsel is ethically required to present to the court at a sentencing hearing." *See* Motion for Funds for Psychological Expert, filed 12/31/15, at ¶ 3. Appellant also baldly averred that she was "without funds to hire a psychologist/mitigation expert to assist counsel in preparation of the sentencing phase of this matter" despite the fact that counsel had been privately retained. *Id*. at ¶ 12-13. Appellant posited that "[a]lthough a plea has been agreed upon, it does mean the entire story has been proffered." *Id*. at ¶ 16.

In her brief, Appellant presents the following Statement of the Question Involved:

Whether the lower court erred in denying the defense motion for funding to hire a psychological expert for sentencing purposes since the refusal to provide funding, or to even conduct a hearing on the need for funding, precluded a defendant who asserted indigence from exploring or developing mitigation issues?

Brief for Appellant at 5.

Appellant states that "[r]ather than litigate the case at trial, it was her plan to prepare for a thorough sentencing hearing." Brief of Appellant at 6. Appellant maintains that the trial court's denial of her motion to obtain public funding to pay for the requested examination deprived her of her right to due process because such an evaluation "could have helped her uncover, understand and develop valuable mitigation evidence" which she otherwise could not obtain as an indigent defendant. *Id*. at 9. Appellant avers it is reasonably likely that a domestic abuse expert's psychological evaluation would have impacted the sentence in that the trial court's mistaken belief it could not provide funding for such a study is evidenced in the fact that it continued the sentencing hearing to enable Appellant to hire an expert. *Id*. at 11. Appellant posits that the United States Supreme Court's decision in *Ake v. Oklahoma*, 470 U.S. 68 (1985) (finding that where his sanity will be an issue at trial, a capital defendant is entitled to court-appointed mental health expert) and this Court's holding in *Commonwealth v. Curnutte*, 871 A.2d 839 (Pa.Super. 2005) (holding an indigent defendant subject to an

SVP hearing under the provisions of Megan's Law II has a procedural due process right to a court-appointed psychological expert) are dispositive herein and urges this Court to vacate her judgment of sentence and remand for new sentencing hearing. *Id*. at 11.

In finding no merit to the aforementioned arguments, the trial court first observed that the proper venue in which to raise a justification for the killing would have been at trial, although Appellant opted not to have one. The trial court related that it had the benefit of psychiatric, psychological and drug/alcohol evaluations prior to sentencing, none of which indicated domestic violence may have played a part in the murder. The trial court highlighted that Appellant accepted responsibility for the murder when she tendered her guilty plea and explained it provided her with additional time prior to sentencing to obtain an evaluation at her own expense. The trial court noted Appellant's versions of events changed three times, and the first two did not include any reference to her abuse at the hands of Officer Hudson. The trial court found most relevant that Officer Hudson had obtained a PFA order against Appellant and that the medical examiner's report did not support the position that Appellant shot Officer Hudson in a "boisterous physical altercation" as she averred in her motion. Trial Court Opinion, filed 5/20/16, at 6-7.

While its observations are sound, the trial court fails first to acknowledge that when a defendant enters a guilty plea, she waives her right to challenge on direct appeal all non-jurisdictional defects except the

legality of her sentence and the validity of her plea. ***Commonwealth v. Pantalion***, 957 A.2d 1267, 1271 (Pa.Super. 2008). Herein, Appellant neither asserts her plea was not entered knowingly, voluntarily and intelligently nor that her sentence was illegal. To the contrary, as the trial court stated, in her Motion for Funds for Psychological Expert, Appellant stated she "has accepted responsibility for the death of Mark Hudson, who was shot once while in the couple's bedroom during a boisterous physical altercation during which [Appellant] felt the need to defend herself." ***See*** Motion for Funds for Psychological Expert, at ¶ 2; Trial Court Opinion, filed 5/20/16, at 6. Appellant echoed this admission when she stated she took "full responsibility" for her "senseless act" and for her "actions" at the time of sentencing. N.T. Sentencing, 2/19/16, at 32-33, 37-38; Trial Court Opinion, filed 5/20/16, at 6. In fact, at no time either at her guilty plea hearing or during her sentencing hearing did Appellant maintain she had been subjected to abuse at the hands of Officer Hudson or that such abuse prompted her to kill him.

As stated above, the trial court had the benefit of a PSI report and the results of psychiatric and psychological examinations prior to rendering its sentence, the legality of which Appellant does not challenge herein. Therefore, we find Appellant waived the issue she raises before this Court when she entered her guilty plea. Accordingly, we affirm Appellant's judgment of sentence. ***Commonwealth v. Moore***, 594 Pa. 619, 638, 937 A.2d 1062, 1073 (2007) (citations omitted) ("an appellate court may affirm

a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016